UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

KEITH TERRELL BUTLER,

                                  Plaintiff,

v.                                                                             9:07-CV-0521
                                                                        (FJS/GHL)

G. MARTIN, Correction Officer, Upstate Correctional
Facility, and JOHN DOE, Correctional Officer,
Upstate Correctional Facility,

                                  Defendants.

_____

APPEARANCES:                                                  OF COUNSEL:

KEITH TERRELL BUTLER, 05-A-1392
Plaintiff *pro se*
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

HON. ANDREW M. CUOMO                           AARON M. BALDWIN, ESQ.
Attorney General for the State of New York       Assistant Attorney General
  Counsel for Defendant G. Martin
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION & ORDER

      This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Generally, Keith Terrell Butler ("Plaintiff") alleges that G. Martin, a corrections officer ("CO") employed by the New York State Department of Corrections ("DOCS"), and other unidentified COs ("Defendant

John Doe")[1] assaulted him at Upstate Correctional Facility ("Upstate CF") on May 3, 2007. Dkt. No. 1.

Currently pending before the Court is Defendant Martin's motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 56. He argues that Plaintiff failed to exhaust his administrative remedies as required under law, therefore summary judgment should be granted. For the reasons that follow, I recommend that Defendant Martin's motion be granted. I also recommend that the Court *sua sponte* dismiss Defendant John Doe due to Plaintiff's failure to timely name and/or serve him pursuant to Fed. R. Civ. P. 41(b) and/or Fed. R. Civ. P. 4(m).

I.      RELEVANT BACKGROUND

Plaintiff alleges that while being escorted by Defendants on May 3, 2007, he was assaulted. Dkt. No. 1 at p. 4. Plaintiff claims that Defendants punched and kicked him in the head, stomach, ribs, lower back, neck, face, and hip area. *Id.* at p. 5. Plaintiff also claims that Defendant Martin told Plaintiff that if he ever "ca[ught]" Plaintiff in his "neighborhood," he would "kill" him. *Id.* at pp. 4-5.

Plaintiff claims that he then sent a grievance regarding the alleged assault by certified mail to the inmate grievance program ("IGP"). Dkt. No. 1 at pp. 2, 5. However, he states that the IGP "never received" the grievance because it was thrown in the garbage by COs. *Id.* at p. 2.

In an affidavit filed in support of Defendant Martin's motion for summary judgment, Karen Bellamy, Director of DOCS' IGP, ("Bellamy") stated that Plaintiff filed numerous grievances in 2007, but the "IGP Office did not receive any grievance complaint [regarding the alleged assault] via certified mail." Dkt. No. 56-4 at ¶¶6, 13 & Ex. D.

---

[1] The unidentified COs are identified on the docket as if they are one defendant ("John Doe").

2

Bellamy also stated that DOCS' procedures require an inmate to make a charge against their inmate account prior to sending certified correspondence. Dkt. No. 56-4 at ¶7. She stated that a search of Plaintiff's inmate account revealed "no charge against Butler's Inmate Account during May 2007 for sending out certified mail nor any request for the same." *Id.* (citing Dkt. No. 56-4, Ex. B).

Bellamy also noted that Plaintiff sent an inquiry regarding the status of his grievance to the IGP. Dkt. No. 56-4 at ¶9. In response, the IGP staff notified Plaintiff on June 12, 2007 that no grievance dated May 3, 2007 or a grievance regarding the use of force on that date was "on file." *Id.* (citing Dkt. No. 56-4, Ex. A). Plaintiff was advised to "forward your complaint directly to the IGP Office so that it may be processed." *Id.*

In response to another inquiry by Plaintiff, the IGP staff advised Plaintiff on June 15, 2007, "There is no grievance on file for you dated 5/3/07. You were advised to forward your complaint directly to the IGP Office so that it may be processed . . . As of this morning, we have not received your 5/3/07 complaint." Dkt. No. 56-4, Ex. B. Plaintiff was also advised that no charge for certified mail was processed against his account. *Id.* Plaintiff was then granted an exception to the time limitation for filing the grievance, and he was "again advised to send [his] 5/3/07 complaint to the IGP Office within 5 days . . . so that it may be processed." *Id.*

On July 20, 2007, in response to correspondence sent by Plaintiff to the Special Housing/Inmate Discipline office, Bellamy notified Plaintiff that he was previously advised on two occasions to submit his grievance regarding the alleged assault, and that "there is no record of a grievance alleging a May 3, 2007 assault." Dkt. No. 56-4, Ex. C. Plaintiff was advised to "address any specific concerns relevant to this grievance to the [IGP] Supervisor via regular facility

3

procedure or to IGP staff during rounds." *Id.*

Bellamy further noted in her affidavit that DOCS' records reflect that Plaintiff never appealed a grievance regarding the alleged assault to the Central Office Review Committee ("CORC"), which is the final level of administrative review in the IGP.  Dkt. No. 56-4, at ¶15 (citing Dkt. No. 56-4, Ex. E).

## II.     APPLICABLE LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  *Major League Baseball Properties, Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).  Only after the moving party has met this burden is the non-moving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[2]  Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]  In determining whether

---

[2]     *Matsushita*, 475 U.S. at 585-86; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . .").

[3]     *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added].

a genuine issue of material[4] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[5]

## III.  ANALYSIS

### A.  Non-Exhaustion of Available Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[6] "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[7]

Generally, the DOCS' IGP involves the following procedure for the filing of grievances.[8] First, an inmate must file a complaint with the facility's IGP clerk within twenty-one (21) calendar days of the alleged occurrence. If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen (16) calendar days from receipt of the grievance to informally

---

[4]  A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[5]  *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[6]  42 U.S.C. § 1997e.

[7]  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[8]  7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7; *see also White v. The State of New York*, 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002).

resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen (16) calendar days of receipt of the grievance, and issues a written decision within two (2) working days of the conclusion of the hearing. Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven (7) calendar days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within twenty (20) calendar days of receipt of the grievant's appeal. Third, a grievant may appeal to the central office review committee ("CORC") within seven (7) working days of receipt of the superintendent's written decision. CORC is to render a written decision within thirty (30) calendar days of receipt of the appeal. It is important to note that any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process.[9]

Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies.[10] However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to

---

[9] 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York*, 198 F. Supp. 2d 546, 549 (S.D.N.Y. 2002), *vacated and remanded on other grounds*, 380 F.3d 680 (2d Cir. 2004); *see, e.g., Croswell v. McCoy*, 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA."); *Reyes v. Punzal,* 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him."); *Nimmons v. Silver*, 03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.).

[10] *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 347-48 (S.D.N.Y. 2002); *Reyes v. Punzal*, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002).

exhaust his available administrative remedies, as required by the PLRA.[11]  First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."[12]  Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."[13]  Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements."[14]

### 1. Availability

To be "available" for purposes of the PLRA, an administrative remedy must afford "the possibility of some relief for the action complained of."  *Booth v. Churner*, 532 U.S. 731, 738 (2001).  In addition, a court deciding this issue must apply an objective test and determine whether a similarly situated person of ordinary firmness would have deemed the administrative remedy available.  *Hemphill*, 380 F.3d at 688.

It is undisputed that administrative remedies were available to Plaintiff.  Upstate CF has a grievance procedure, which Plaintiff has acknowledged and, in fact, utilized by filing other

---

[11] *See Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).

[12] *Hemphill*, 380 F.3d at 686 (citation omitted).

[13] *Id*. [citations omitted].

[14] *Id*. [citations and internal quotations omitted].

grievances at this facility.  Dkt. No. 1 at ¶4; Dkt. No. 56-4 at ¶13 & Ex. D.

### 2. Forfeiture or Estoppel

Defendant Martin has not forfeited the administrative remedy defense.  He raised it in the answer to the complaint.  Dkt. No. 9 at ¶16.

Moreover, Defendant Martin should not be estopped from asserting the defense.  "A plaintiff's failure to exhaust . . . may be excused on the grounds of estoppel where the plaintiff was misled, threatened, or otherwise deterred from fulfilling the requisite procedures."  *Winston v. Woodward*, No. 05 Civ. 3385, 2008 WL 2263191, at *9 (S.D.N.Y. May 30, 2008) (citing *Hemphill*, 380 F.3d at 688-89) (other citation omitted)).

Plaintiff claims that he filed the grievance via certified mail.  Dkt. No. 1 at p. 5.  According to Bellamy, an inmate is required to make a charge against their inmate account prior to sending certified mail.  Dkt. No. 56-4, at ¶7.  However, there was no charge against Plaintiff's account during May of 2007 for certified mail nor a request for the same.  *Id.* (citing Ex. B).

In addition, Plaintiff was advised on multiple occasions by the Inmate Grievance staff that no grievance regarding the alleged assault was on file and that he should forward his complaint directly to the IGP Office for processing.  Dkt. No. 56-4, Exs. A-B; *see* Ex. C.  Plaintiff was even granted an exception to the time limit for filing his grievance.  Dkt. No. 56-4, Ex. B.

Plaintiff claims in his opposition papers[15] that he "refiled" his grievance "several different times," but that his "complaints got tossed by officers."  Dkt. No. 58-2, at ¶¶10, 13.  Plaintiff also

---

[15]  Plaintiff's opposition papers consist of the submission that he titled "Motion for Summary Judgment" and "Motion to Dismiss."  Dkt. No. 58.  The Court construed these papers as his response in opposition to Defendant's motion for summary judgment.  Dkt. No. 59.  Accordingly, while Plaintiff recently inquired as to the status of his "summary judgment [motion]," Dkt. No. 69, Plaintiff is again advised that this submission was construed as his response in opposition to Defendant Martin's present motion.  *See* Dkt. No. 59.

includes a copy of a letter addressed to "Grievance" from Plaintiff that is dated May 3, 2007 and June 13, 2007, which describes the alleged assault. *Id.* at Ex. B, p. 5. However, a summary of the grievances that were received by the IGP from Plaintiff reveals that the IGP received no grievance regarding the alleged assault. Dkt. No. 56-4 at ¶12 & Ex. D.

Even if, as alleged, Plaintiff's grievances were discarded, Plaintiff offers no evidence that a particular officer discarded the grievances. Similarly, in *Veloz v. New York*, the prisoner claimed that he placed his grievances in the mail, "but that his grievances were either misplaced or destroyed." 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004), *aff'd*, 178 Fed. Appx. 39 (2d Cir. 2006). The Court found it significant that Plaintiff "offers no evidence that any particular officer thwarted his attempts to file [the grievances] . . . His allegations 'stand alone and unsupported.'" *Id.* at 516 (quoting *Nunez v. Goord*, 172 F. Supp. 2d 417, 429 (S.D.N.Y. 2001)); *see also Winston*, 2008 WL 2263191, at *10 (rejecting assertion that plaintiff failed to exhaust administrative remedies due to mail tampering because Plaintiff failed "to put forth any corroborating evidence, either direct or circumstantial"). Thus, Plaintiff's unsupported assertion that his grievances were discarded provides no basis for a finding of estoppel.

In addition, Plaintiff was obligated to appeal to the next administrative level once it became clear to him that a response to his grievances was not forthcoming. *See* 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Veloz*, 339 F. Supp. 2d at 516 (noting that "plaintiff's allegation that these particular grievances were misplaced or destroyed by [COs] ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming"); *Martinez v. Dr. Williams R.*, 186 F. Supp. 2d 353, 357 (S.D.N.Y. 2002) (finding that the inmate

"could have and should have" appealed when inmate received no response to grievance).  There is no indication that Plaintiff filed such an appeal.[16]  In light of the foregoing, Defendant Martin should not be estopped from asserting the defense of failure to exhaust.

### 3.     Special Circumstances

Justification "must be determined by looking at the circumstances which might understandably lead . . . uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004).  However, when a prisoner is "explicitly told" of the proper grievance procedure, the failure to follow the procedure is unjustifiable.  *Reynoso v. Swezey*, 238 Fed. Appx. 660, 663 (2d Cir. 2007), *cert. denied*, 128 S.Ct. 1278 (2008).

As noted, Plaintiff was advised by the Inmate Grievance staff on multiple occasions that no grievance concerning the alleged assault was on file for him and that he should forward his complaint directly to the IGP Office for processing.  Dkt. No. 56-4, Exs. A-B; *see* Ex. C.  Plaintiff was even granted an exception to the time limit for filing his grievance.  Dkt. No. 56-4, Ex. B.  However, no grievance regarding the alleged assault was received by the IGP.  Dkt. No. 56-4 at ¶12 & Ex. D.  Accordingly, there is no justification for Plaintiff's failure to exhaust his administrative remedies.

In sum, I find that there is no genuine issue as to any material fact regarding Plaintiff's failure to exhaust his available administrative remedies.  Therefore, I recommend that the motion for summary judgment be granted.

### B.     *Sua sponte* Dismissal of Defendant John Doe

---

[16]     In his opposition papers, Plaintiff included a copy of a decision dated July 3, 2007 by the Superintendent of Upstate CF.  Dkt. No. 58-5, Ex. A, at p.1.  I note that the decision pertained to Plaintiff's grievance regarding the handling of his mail by a CO and did not pertain to the alleged assault.  *See id*.

Plaintiff alleges that he was also assaulted by Defendant John Doe. Dkt. No. 1. To date, Plaintiff has failed to properly identify this defendant. Nor has Plaintiff served this Defendant, as he was required to do by the Federal Rules of Civil Procedure. Dkt. No. 6.

Rule 41 of the Federal Rules of Civil Procedure permits the Court to *sua sponte* dismiss an action for failure to prosecute and/or failure to comply with an Order of the Court. Fed. R. Civ. P. 41(b).[17] As a result, Fed. R. Civ. P. 41(b) may be fairly characterized as providing for two independent grounds for dismissal: (1) a failure to prosecute the action, and (2) a failure to comply with the Federal Rules of Civil Procedure or any order of court.

With regard to the first ground for dismissal (a failure to prosecute the action), the Second Circuit has held that it is within the trial judge's sound discretion to dismiss for want of prosecution.[18] The Second Circuit has identified five factors that it considers when reviewing a district court's order to dismiss an action for failure to prosecute under Fed. R. Civ. P. 41(b):

> [1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard and [5] whether the judge has adequately

---

[17] Fed. R. Civ. P. 41(b) (providing, in pertinent part, that "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant"); *Saylor v. Bastedo*, 623 F.2d 230, 238-239 (2d Cir. 1980) (recognizing that, under the language of Fed. R. Civ. P. 41[b], a district court retains the inherent power to dismiss a plaintiff's complaint, *sua sponte*, for failure to prosecute) [citations omitted], *accord*, *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962), *Theilmann v. Rutland Hospital, Inc.*, 455 F.2d 853, 855 (2d Cir. 1972); *see also* N.D.N.Y. L.R. 41.2(a) ("Whenever it appears that the plaintiff has failed to prosecute an action or proceeding diligently, the assigned judge *shall* order it dismissed.") [emphasis added]; *cf.* Fed. R. Civ. P. 16(f) ("If a party . . . fails to obey a scheduling or pretrial order . . . the judge, upon motion or *in the judge's own initiative*, may make such orders with regard thereto as are just . . . .") [emphasis added].

[18] *See Merker v. Rice*, 649 F.2d 171, 173 (2d Cir. 1981).

11

assessed the efficacy of lesser sanctions.[19]

As a general rule, no single one of these five factors is dispositive.[20]

Here, I find that these five factors weigh decidedly in favor of dismissal. First, on June 6, 2007, the Court directed Plaintiff to, *inter alia*, take reasonable steps to ascertain the identity of Defendant Doe and to provide all documents necessary to maintain this action. *See* Dkt. No. 6 at p. 4.[21] Plaintiff subsequently submitted several documents in which he supplied various names for Defendant Doe.[22] Dkt. Nos. 17, 27. However, those submissions were stricken from the docket because they were deficient in various aspects. Dkt. Nos. 18, 29. Plaintiff was advised of the nature of the deficiencies, as well as methods of correcting the deficiencies. *Id.* To date, Plaintiff has still not properly identified this defendant. This failure has persisted for more than two years. Thus, I find that the duration of Plaintiff's failure weighs in favor of dismissal.

With regard to the other dismissal factors, I find that Plaintiff has received adequate notice that this failure to name and/or serve Defendant Doe would result in dismissal.[23] I find that

---

[19] *See Shannon v. GE Co.*, 186 F.3d 186, 193 (2d Cir. 1999) (affirming Fed. R. Civ. P. 41[b] dismissal of plaintiff's claims by U.S. District Court for Northern District of New York based on plaintiff's failure to prosecute the action) [citation and internal quotation marks omitted]; *see also Drake v. Norden Sys.*, 375 F.3d 248, 254 (2d Cir. 2004) (articulating same standard in slightly different form), *accord*, *Ruzsa v. Rubenstein & Sendy Attys at Law*, 520 F.3d 176, 177 (2d Cir. 2008).

[20] *See Nita v. Conn. Dep't of Env. Protection*, 16 F.3d 482 (2d Cir. 1994).

[21] *See Ruzsa v. Rubenstein & Sendy Attys at Law*, 520 F.3d at 177 (dismissing action, in part because of plaintiff's seven-month delay during prosecution of action).

[22] For instance, in the November 23, 2007 submission, Plaintiff identified the John Doe Defendant as "Wayne Blue." Dkt. No. 27 at p. 1. However, later in the same submission, Plaintiff identified the defendant as "defendants Blue, Yellow and Red." *Id.* at p. 2. On other occasions, Plaintiff identified this defendant as "John Desotelle," Dkt. No. 17, 69, including in a recent letter to the Court in which Plaintiff appears to be under the impression that he properly named this Defendant as "John Desotelle" in 2007. Dkt. No. 69.

[23] This notice has come from the following: (1) the Court's Order of June 6, 2007, in which the Court specifically advised Plaintiff that "[i]f Plaintiff fails to ascertain the identity of any 'John Doe' Defendants so as to permit the timely service of process, the Court will dismiss this action against any such 'John Doe' Defendants" (Dkt.

Defendant Doe, who has not even been served or afforded the opportunity to conduct discovery in this matter, is likely to be prejudiced by a further delay.[24] I find that the need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard in this matter.[25] Finally, I have considered all less-drastic sanctions and find them to be inadequate or inappropriate under the circumstances. Accordingly, Defendant Doe should be dismissed because Plaintiff has failed to timely name this defendant.

With regard to the second ground for dismissal (a failure to comply with the Federal Rules of Civil Procedure), I find that Plaintiff's claim against Defendant Doe should be dismissed on the ground that he has violated Fed. R. Civ. P. 4(m). This Rule provides:

> If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

Here, Plaintiff has not offered "good cause" for his failure to enable the Marshals Service to effect service on that Defendant. Accordingly, Defendant Doe should be dismissed because Plaintiff has failed to timely serve this defendant.

Lastly, I note that even if Plaintiff had properly named Defendant Doe, it would be of no

---

No. 6 at pp. 1-2); (2) Local Rule 41.2(a) of the Local Rules of Practice for this Court, which the Clerk's Office has provided to all correctional facilities in New York State; (3) Fed. R. Civ. P. 4(m); and/or (4) Fed. R. Civ. P. 16(f)(C).

[24]  *See*, *e.g.*, *Geordiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) ("The passage of time always threatens difficulty as memories fade. Given the age of this case, that problem probably is severe already. The additional delay that plaintiff has caused here can only make matters worse.").

[25]  I note that it is cases like this one that delay the resolution of other cases, and that contribute to the Second Circuit's dubious distinction as having (among the twelve circuits, including the D.C. Circuit) the longest median time to disposition for prisoner civil rights cases, between 2000 and 2005 (9.8 months, as compared to a national average of 5.7 months).

consequence because Plaintiff has failed to exhaust his administrative remedies. *See supra* Part III(A).

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendant Martin's motion for summary judgment (Dkt. No. 56) be **GRANTED**; and it is further

**RECOMMENDED** that Defendant John Doe be **DISMISSED** from this action; and it is further

**ORDERED** that the Clerk serve copies of the electronically-available-only opinions cited on pages 4-6, 8, and 14 of this Report-Recommendation & Order on Plaintiff.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day)**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

**BE ADVISED that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.**[26]

---

[26] *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18 n.8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: August 7, 2009
       Syracuse, New York

*George H. Lowe* (signature)
George H. Lowe
United States Magistrate Judge

---

omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] . . . Respondent has waived procedural default . . . objection[].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].